CURTIS, J.
 

 This is an appeal by defendant, W. D. Dilbeck, from a judgment against him in the sum of $13,275.77, found by the trial court to be the balance due from him to
 
 *343
 
 plaintiff upon a certain agreement between them. Plaintiff, T. W. Mitchell, the secretary-treasurer of the Home Benefit Association, a local mutual aid association operating under the laws of the state of Texas, with headquarters at Hillsboro, Texas, on November 28,1932, entered into the following agreement with the defendant:
 

 " State of Texas, County of Hill.
 

 “T. W. Mitchell, first party, and W. D. Dilbeck, second party, make the following agreement:
 

 ‘
 
 ‘ 1. First party agrees to and does hereby sell to the second party all of his right, title and interest to all of the monies, assessments, dues and other benefits owned by him as Secretary-Treasurer of the Home Benefit Association, of Hillsboro, Texas.
 

 “2.
 
 Second party agrees to pay as consideration for the above property, $5.00 per thousand of insurance in force at this date payable as follows: $2,955.00 cash representing $1.00 per thousand of insurance, the receipt of which cash is hereby acknowledged $11,820.00 representing $4.00 per thousand of insurance, said $11,820.00 to be paid out of 50% of all premiums collected from members of the Home Benefit Association who transfer to the Equitable Mutual Life Insurance Company, Dallas, Texas, said 50% of said premiums to belong to first party until said amount is fully paid. It is understood that the above figures are based upon an estimate of the insurance at this date in force but it is agreed that such insurance is sufficient in amount to equal said figures combined and it is further agreed that additional payment upon the same basis, viz., $1.00 cash per thousand, and $4.00 per thousand, out of said 50% of premiums collected from members so transferred shall be made for any insurance in addition to the amount used as an estimate upon which to base the above figures, viz., $2,955.00 and $11,820.00. It is further agreed by second party that the payments out of premiums shall not be less than $1,000 per month, beginning with thirty days from this date and second party hereby personally guarantees that said payments out of said premiums shall be at least $1,000 per month, said guarantee to be in full force and effect and recoverable upon, regardless of the amount of premiums collected or the length of time for which collected, and said agreement and guarantee that first party shall receive said $1,000.00 per month, shall be and
 
 *344
 
 is continuous until the full amount of the consideration out of premium has been paid. Second party further agrees to have issued to first party and fully paid for at second party’s expense stock in the Equitable Agency Finance Corporation, sufficient to equal $1.00 per thousand of insurance in force at this date, said stock to be not less than $2,955.00 in amount, said stock to be valued at $10.00 per share.
 

 “3. Second party in consideration hereof agrees to carry out and perform the proposals which are substantially set forth in the attached paper marked ‘Proposals of W. D. Dilbeck, ’ which proposals are made a part hereof just as tho written herein.
 

 “Witness our hands at Hillsboro, Texas, this 28 day of November, 1932.
 

 “T. W. Mitchell “W. D. Dilbeck.”
 

 “Proposals of W. D. Dilbeck:
 

 ‘ ‘ Satisfactory arrangements to be made with T. W. Mitchell, as Secretary of the Home Benefit Association, as to remuneration and working arrangements.
 

 “Four members of the Board of Directors of the Home Benefit Association to resign in favor of four directors to be selected by Mr. Dilbeck.
 

 “After Equitable Mutual Life Insurance Company has received permanent licenses then the Equitable is to reinsure for the face amount of the policies all members in Classes A and C, with the opportunity of each member in Classes A and C to transfer for like amount of insurance to the Equitable Mutual Life Insurance Company at the Equitable rate at the attained age at the time of transfer.
 

 “Home Benefit Association to remain intact and operate Class B with the understanding that Mr. Dilbeck and the officers of the Equitable Mutual Life shall put forth every effort and means to build up Class B by placing members therein in groups or individually from time to time, with the understanding that any member in Class A or C who does not desire a policy in the Equitable that said member shall have the right and opportunity to be placed in Class B in the Home Benefit Association.
 

 “The limit of time in which the members of Class A and C shall have to transfer to the Equitable shall be fixed by agree
 
 *345
 
 ment of the Board of Directors of the Home Benefit Association and the Board of Directors of the Equitable, contract to be effective when approved by the Board of Insurance Commissioners of Texas.”
 

 Plaintiff had been secretary-treasurer of the Home Benefit Association since 1916, and during that time had received ‘‘anywhere from $5,000 to $15,000 a year” from the fees and commissions allowed him as secretary’s expense on death assessments paid by the members of the association. The schedule of rates, benefits and expenses were set out in detail in the by-laws of the association. These by-laws and the constitution of said association had been officially approved' by the board of insurance commissioners of the state of Texas which in 1929 by statute had been given control over the local mutual aid associations. (Tit. 78, art. 4875a, Vernon’s Ann. Rev. Civ. Stats.) Article III, section 3, of the by-laws of the Home Benefit Association provided as follows:
 

 ‘‘The Secretary-Treasurer shall be T. W. Mitchell, and he shall remain in office until he shall die, resign or be removed from office in the manner for some one or more of the causes specified in Article 2, Section 4 of the By-Laws of this Association. . . .
 

 ‘‘It is agreed and understood that the property rights of the office of the Secretary-Treasurer are and shall be both legally and equitably vested in the said T. W. Mitchell, and he is and shall be entitled to all the fees, emoluments, and perquisites thereof prescribed by the Constitution and ByLaws of this Association, and any amendments thereto which may hereafter be adopted. In the event charges are filed against the said T. W. Mitchell, to remove him from office he shall have the right, after such charges are filed and even after removal from office, to transfer and assign the equipment and property of said office and' the fees, perquisites and emoluments thereof prescribed by the Constitution and By-Laws of this Association and any amendments thereto, which may hereafter be adopted. ”
 

 Plaintiff received from the defendant the sum of $3,183 at the time of the execution of the agreement, but never thereafter received any payment on the balance due. In his amended complaint, plaintiff alleged that he had performed all the terms upon his part to be performed, and prayed for
 
 *346
 
 a judgment for $11,820, together with interest, and for the further sum of $2,955, the alleged reasonable value of certain stock in the Equitable Agency Finance Corporation which defendant was to deliver to plaintiff under the terms of the agreement. Upon the trial of the ease, which was heard in the Superior Court in and for the County of Los Angeles as the defendant was a resident of said county, the trial court found in favor of the plaintiff to the effect that he had performed each and every obligation undertaken and agreed to be performed by. him under the terms of the contract above set forth. It further found that the reasonable value of the stock agreed to be delivered by defendant to plaintiff was on November 28, 1932, and continuously thereafter, valueless; and that there remained due and unpaid from the defendant the sum of $11,820 with interest from the dates upon which the various instalments became due, which amounted to the total sum of $13,275.77. Judgment was entered accordingly.
 

 Appellant admits the execution of the written agreement by him and the nonpayment of the '$11,820, the balance due under the agreement, but sets up as grounds for the reversal of the judgment three main contentions. We shall discuss them in the following order:
 

 (1) Appellant and respondent agreed for a monetary consideration to cause the directors and officers of a nonprofit benefit association to resign, thereby rendering void the entire agreement between the parties on the ground that it was contrary to public policy;
 

 (2) Respondent owned nothing which he could sell to appellant; and
 

 (3) The agreement was not to be effective until it had been approved by the board of insurance commissioners of the state of Texas, which approval was never had, and was subject further to the approval of a reinsurance agreement between two companies, which was never approved by the board of insurance commissioners of the state of Texas.
 

 There can be no question that if the respondent actually agreed for a monetary consideration to cause the directors and officers of the association to resign, the agreement to do so was void as contrary to public policy. While directors may resign when they please, they must not make a profit to themselves in the matter of their resignation, and to be bought out of office would be a violation of their trust.
 
 *347
 
 (See authorities collected in 12 A. L. R. 1071.) Appellant cites
 
 Forbes
 
 v.
 
 McDonald,
 
 54 Cal. 98, as strongly supporting his position with reference to this contention. That case does undoubtedly contain language supporting appellant’s contention. It should be pointed out, however, that that case was decided in department and that only two justices concurred in the opinion, the other justice concurring merely in the decision. However, while we are of the opinion that such an agreement would be contrary to public policy, we are of the opinion that the rule is not applicable to the instant case for the reason that the written instrument plainly shows on its face that respondent never agreed for a consideration or otherwise to procure the resignation of the directors of the association. There is not a single statement in the written agreement of the parties which can be construed as an obligation on the part of the. respondent to procure the resignation of any of the directors. A most cursory examination of the document shows that the paragraph having reference to the resignation of the directors is contained in the “Proposals of W. D. Dilbeck”, and that in paragraph 3 of the agreement itself, it is Dilbeck,
 
 the appellant,
 
 who as the “second party” obligates himself to perform the proposals set forth in the attached “Proposals of W. D. Dilbeck”, and not the respondent. It is only by going completely outside the agreement of the parties, and by saying that because appellant could not possibly perform such obligation, the duty must perforce have been upon the respondent to perform it, that such an obligation can be “read into” the written agreement. In view of the fact that appellant, who is
 
 in pari delicto
 
 with respondent if the agreement was an illegal agreement, after receiving from respondent the valuable property rights agreed to be transferred, is attempting to escape his obligations to pay therefor by claiming the contract to be void by reason of the agreement of respondent to perform an act contrary to public policy, we deem it to be incumbent upon appellant to show clearly and unequivocally that respondent did obligate himself to perform such act. Under the circumstances, we see no good reason for going outside the contract to impose an obligation upon respondent to which he did not assent, and by virtue of that asserted obligation, deprive him of the
 
 *348
 
 right to recover the consideration for valuable property rights transferred by him to the appellant. According to the plain terms of the agreement, all the respondent ever agreed to do was to sell his right, title and interest to all of the monies, assessments, dues and other benefits owned by him as secretary-treasurer of the association. There was nothing contrary to public policy in this obligation. It may be that the respondent took some part in securing the resignation of the directors, but such action was entirely gratuitous on his part for he was under no legal obligation so to do. Such acts on his part were wholly outside the written agreement of the parties and could not, therefore, affect the legality of such agreement.
 

 Appellant’s second contention that respondent owned nothing which he could sell is untenable. The constitution and by-laws of the association made specific provision that the respondent as secretary-treasurer should own the property right to such office and be entitled to the fees, emoluments and perquisites of the office prescribed by the constitution and by-laws, and that he had the right to assign them. These fees referred to in the by-laws w'ere the annual dues and a certain percentage of each assessment. The by-laws specifically designated the right of the secretary-treasurer to the office as a “property right”. That such a right is valuable is shown by the fact that respondent received from $5,000 to $15,000 per year by virtue of such ownership. These bylaws had been approved by the board of insurance commissioners of the state of Texas. In view of this provision of the by-laws, the argument of appellant that the association being a nonprofit one and the members as such constituting the association, therefore, the association and its members owned all of the assets or property rights of the association, and that respondent owned nothing, is not, in our opinion, sound. The association by its by-laws carved out of all money coming into the association a certain percentage which it declared was to belong to respondent as secretary-treasurer, and declared such interest to be assignable by him. This being so, respondent did own a valuable right which could be sold by him. At least, appellant, who was an experienced insurance man and who was fully conversant with the affairs of the association, considered it sufficiently valuable to offer
 
 *349
 
 him over $10,000 for it. Appellant severely criticizes the by-law, designating it as a “vicious set-up”. Obviously, the answer to any such criticism is that the by-law was approved by the board of insurance commissioners of the state of Texas, and we do not deem it incumbent upon us to go behind that approval to declare such a by-law illegal and invalid.
 

 Appellant attempts to read into the agreement a provision that the agreement was not to be effective until approved by the board of insurance commissioners of Texas, and a provision that respondent obligated himself to procure the approval of the board of insurance commissioners of Texas to a reinsurance contract mentioned in the “Proposals of W. D. Dilbeck”. An examination of the written agreement demonstrates that there is no merit in this contention. Nowhere in the agreement did respondent obligate himself to procure such approval.
 

 It appears from the record that appellant, at the time the agreement herein discussed was entered into, was desirous of building up a large volume of business for the Equitable Mutual Life Insurance Company in order that the temporary permit of that company should be made permanent. It also appears from his own testimony that he derived a definite benefit from the written agreement with respondent in that certain members of classes A and C of the Home Benefit Association transferred to the Mutual Life Insurance Company, thus swelling the volume of business of that company and aiding in the securing of the permanent permit for that company. It further clearly appears that respondent by the execution of this agreement and the performance of the obligation therein imposed upon him of turning over the office of secretary-treasurer to the appellant suffered a definite detriment.
 

 The appellant in addition to his answer filed a cross-complaint seeking recovery of the sum of $3,183, the down payment made by him at the time of the execution of the agreement, upon the theory that, the whole agreement being illegal, he was entitled to recover back that part of the consideration which he had already paid. In view of what we have said, it is clear that he is not entitled to any recovery upon his cross-complaint.
 

 
 *350
 
 The judgment of the trial court should be and it is hereby affirmed.
 

 Langdon, J., Shenk, J., Edmonds, J., Waste, C. J., and Seawell, J., concurred.
 

 Rehearing denied.