GRIFFIN v. PATTERSON et al.

No. 28211.    May 10, 1938.

Rehearing Denied June 14, 1938.

Albert L. McRill, for plaintiff in error.

Bliss Kelly and Oren Parmeter, for defendants in error.

HURST, J. This is an action to recover damages for breach of contract. Plaintiffs, W. T. Patterson and Loyd Patterson, were officers of the Bankers Guaranty Life Company of Dallas, Tex. On March 5, 1932, they entered into a written contract with defendant, C. J. Griffin, which constitutes the subject of this action. It was there provided in substance that plaintiffs would sell all the office furniture and fixtures being used by the company and perform "certain services" for the sum of $20,000, half of which sum to be paid by the delivery of certain securities and the other half to be paid in designated installments. More specifically, the contract reads as follows:

"That W. T. Patterson and Loyd Patterson have Sold, Transferred and Delivered and do by these presents Sell, Transfer and Deliver unto C. J. Griffin all office furniture, furnishings and fixtures located in the offices at this time occupied by Bankers Guaranty Life Company, a corporation, in Dallas, Texas, and in Athens, Texas.

"That the said C. J. Griffin, as the consideration for certain services performed and to be performed by W. T. Patterson and Loyd Patterson, has agreed and does hereby agree to take such steps as are necessary to dissolve a corporation known as Bankers Guaranty Life Company of Little Rock, Arkansas, and to deliver to W. T. Patterson and Loyd Patterson securities in the sum of Ten Thousand ($10,000.00) Dollars now held on deposit by the Commissioner of Insurance of the State of Arkansas. * * *

"The said C. J. Griffin further promises, binds and obligates himself to pay to the said W. T. Patterson and Loyd Patterson, the further sum of Ten Thousand ($10,-000.00) Dollars in six (6) equal monthly payments due on the 5th day of each calendar month hereafter; provided that if there shall not be received by the said C. J. Griffin, as proceeds payable to him from Bankers Guaranty Life Company of Dallas, Texas, or if the proceeds derived from business at this date owned by Bankers Guaranty Life Company of Dallas, Texas; in any one month shall not be as much as the amount of the monthly payment herein agreed to be made, there shall be no personal obligation upon the part of said C. J. Griffin to make such monthly payments in any sum greater than the amount collected by him if, as and when so received and collected by him. But in such event monthly payments shall be continued to the extent received as such proceeds until the full amount of the $10,000.00 shall be paid."

Plaintiffs proceeded upon two causes of action. For their first cause of action they alleged that defendant refused to deliver the bonds as agreed and they were forced to institute suit to recover their possession.

It was alleged that by virtue of that suit plaintiffs obtained possession of the securities on February 15, 1933, at a time when they were worth only 40 per cent. of their face value of $10,000, and they therefore seek to recover $6,000 as damages for the failure of defendant to deliver the securities as agreed. They also seek to recover the amount they were compelled to spend in prosecuting the litigation. For their second cause of action they seek to recover the remaining $10,000 alleged to be due under the contract and which defendant has wholly refused to pay. Plaintiffs introduced their evidence, and defendant demurred thereto. The demurrer being overruled, defendant elected to stand on the demurrer, and introduced no evidence. The case was submitted to the jury, and a verdict was returned in favor of plaintiffs for $3,500 on their first cause of action and $10,000 on their second cause of action. Judgment was rendered thereon, and defendant brings this appeal.

■ Defendant's first contention is that the court erred in not sustaining his demurrer to plaintiffs' evidence, and in not directing the jury to return a verdict for defendant. He presents the following proposition: "The parties to this litigation agreed, for a monetary consideration, that plaintiffs would resign as officers and directors of a mutual benefit association, and would cause all other officers of said association to resign, and would cause to be put in their places officers and directors selected by defendant. Such agreement was void as being contrary to public policy." Defendant argues that these were the "services performed and to be performed" as stated in the contract. For such "services", it is contended, plaintiffs were to receive the sum of $20,000. Defendant then cites many authorities to the effect that a contract by officers and directors of a corporation to resign and turn the management and control of the company over to another, for a monetary consideration, is void as against public policy and unenforceable by either party. Sauerhering v. Ruping (Wis.) 119 N. W. 184; Forbes v. McDonald, 54 Cal. 98; and many cases cited in 12 A. L. R. 1071. There can be no question as to the correctness of this rule, but the evidence cannot support its application here. There is nothing on the face of the contract disclosing such illegal purpose. The illegal intention or purpose of the contract, therefore, must be shown by the evidence. No question has been raised as to the right to introduce oral testimony to show the intention of the parties. Both apparently treat the contract as

ambiguous. By section 9467, O. S. 1931, "a contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties". In passing upon a demurrer to the evidence, the court will view the same in its most favorable light toward the party against whom the demurrer is directed. If there is any competent evidence reasonably tending to establish plaintiff's cause of action, a demurrer thereto and motion for directed verdict should be overruled. Evans v. Burleson (1927) 127 Okla. 290, 260 P. 743.

The testimony adduced by plaintiffs was to the effect that the services to be performed were the sale of an agency contract which plaintiffs had with the company and instruction pertaining to the turning over of the contract and effects of the office. Plaintiffs specifically testified that they were not selling the mutual company and that their motive for resigning was the representation of defendant that he could better the welfare of the company, and could bring in new business and pay off the outstanding claims to the benefit of the policyholders and beneficiaries. The evidence discloses that plaintiffs' term of office had expired and they could resign at any time at will. Without reviewing the evidence in more detail here, it is sufficient to say that there is competent evidence to support the finding that the parties did not intend that the services to be performed were to be the resignation of the officers and the sale of their positions of trust to defendant for a monetary consideration, but rather such services were those in connection with the sale of the agency contract. Under such evidence the contract was not executed for the illegal purpose contended for by defendant, and it was not error to overrule defendant's demurrer and motion for directed verdict. It is not contended that the contract is otherwise illegal; therefore defendant's first contention is untenable. This contention merely goes to the sufficiency of the evidence and the question of the sufficiency of the instruction on this point is not presented. For analogous case on this point, see Mitchell v. Dilbeck (1937 Cal.) 74 P.2d 233.

■ Defendant's second contention is that the contract having but a single object and such object being unlawful, the entire contract is void. It is not necessary to discuss the question of whether this contract is divisible or indivisible in its terms, for what we have said regarding its legality disposes of this contention.

■ Defendant next contends that even if a recovery could be had under this contract, there is a total lack of evidence to sustain the verdict and judgment. The argument in this connection is that, under the contract, there can be no liability on plaintiffs' second cause of action without proof that defendant has received the sum of $10,000 from the Bankers Guaranty Company. The contract unequivocally obligates the defendant to pay the sum of $10,000 in addition to the delivery of the securities, and the proceeds received by defendant from the company represent the manner and time for the continuation of the monthly payments.

It is provided that if there shall not be received by defendant sufficient money each month to make the specified payments, there shall be no personal obligation to pay in any one month more than defendant receives. In order to establish liability upon the defendant under the contract it is not necessary to show the amount he received each month. A plausible construction of the contract would place the burden on defendant to prove that his income was not sufficient and that the total sum was not yet payable. He introduced no evidence. In any event, however, if there is any competent evidence in the record from which the jury might infer that defendant has received in excess of the sum of $10,000, that would be sufficient under the construction most favorable to defendant.

There is evidence that the Oklahoma State Life Association, operated by defendant, took over and assumed "all" or "over ninety per cent." of the business of the Bankers Guaranty Life Insurance Company of Dallas. The record shows that the income from the Oklahoma company during the eight months after it took over the Texas company was in the neighborhood of $190,000. Defendant's statement filed with the State Insurance Department indicated that about two-thirds of the Oklahoma company's business came from the Texas company. The annual statement of the Oklahoma company for the year 1932 shows that defendant received $7,375 as salary and $26,000 claimed to be reimbursement for money paid on behalf of the company. Approximately $7,000 of this was shown on the books of the Oklahoma company as cash from the Texas company. The report of the Oklahoma State Bank Examiner reflects that "the association records do not show, as such, any money advanced, donated or loaned by Mr. Griffin and employees were not able to show me just what this covered". This evidence is, in its nature, circumstantial. But in

view of all the testimony and exhibits, we think there is competent evidence reasonably tending to support a finding by the jury that defendant had received the sum of $10,000 as a result of the business of the Bankers Guaranty Life Insurance Company of Dallas, Tex.

Defendant, in this regard, argues that there is no proof of damages as to the first cause of action. Defendant states:

"Inasmuch as the property was returned to the owner, his measure of damages was any actual loss actually sustained, together with a fair compensation for the time and money properly expended in pursuit of the property. The plaintiffs did not offer any evidence showing a detriment other than the money spent in pursuit of the property. The burden was on the plaintiffs to show actual damages, and it was their further duty to show by a preponderance of evidence that they had sustained a loss, either in the sale of the property or in the present depreciation of the property. The court cannot assume that they sustained a loss until that loss is actually shown."

The contract fixed the value of the securities at $10,000. There was evidence that at the time of the making of the contract they were worth par, and at the time they were recovered by plaintiffs they had a value of only 40 or 50 cents on the dollar. Thus there was evidence of the depreciation of the stock and loss to plaintiffs by reason of the breach of the contract in refusing to deliver the securities as agreed. There was further evidence of a $500 attorney fee and $25 or $35 expenses in prosecuting the litigation. The verdict of the jury on this cause of action was $3,500. The court, in instruction No. 5, told the jury that plaintiffs contended that by the refusal of defendant to deliver the securities, worth $10,000, they were compelled to bring suit, and that the securities had depreciated in value in the interim and when finally obtained were worth only approximately $4,000 instead of $10,000. The court then instructed the jury that if they found that defendant had breached the contract, "it would then be your duty to find for the plaintiffs for whatever sum, under the evidence, you find that they are entitled to, in no event to exceed $6,000." The instruction further permitted the jury to assess damages to compensate plaintiffs for their expenses, not to exceed $535, and "on the second cause of action, that pertaining to the $10,000 cash payments under the contract, you will find for the plaintiffs for

whatever sum, under the evidence, you find they are entitled to, in no event to exceed the sum of $10,000." The defendant argues that the court failed to instruct the jury as to the measure of damages. Defendant excepted to this instruction, but made no request for an instruction correctly stating the measure of damages. Although he specifies as an assignment of error that "there was error in the assessment of the amount of recovery, the same being too large", he does not contend in his brief that the verdict of the jury is excessive. This court has held that where there is competent evidence tending to show the damages alleged, and the verdict is not excessive, and when the complaining party does not request the trial court to give an instruction correctly stating the measure of damages, a cause will not be reversed because the court's charge does not accurately define the measure of damages. Burden v. Stephens (1935) 174 Okla. 312, 49 P.2d 1098, and cases therein cited.

Defendant further contends that there was no election of the measure of damages sought to be applied, "which is another reason why it was incumbent upon the court to give a proper instruction on the measure of damages." He relies on Funk v. Hendricks (1909) 24 Okla. 837, 105 P. 352, to the effect that in an action for damages for conversion of personal property the injured party must elect which measure of damages he claims (under section 9986, O. S. 1931), either in his pleadings or at the time the case is submitted to the jury. We think there is no merit to this argument. If this be treated as an action for conversion, the allegations of the petition referred to above constitute a sufficient election. But we are of the opinion that under the pleadings the action is simply one for breach of contract, in which case the measure of damages is defined in section 9963, O. S. 1931, and no such election is necessary. Defendant's arguments are based largely on conclusions drawn from the evidence. Although plaintiffs' evidence in some respects is not altogether explicit, particularly regarding the agency contract, yet we think it clear, from an examination of the entire record, that there was competent evidence tending to support the verdict and judgment in every material respect complained of here.

Judgment affirmed.

BAYLESS, V. C. J., and RILEY, PHELPS, and GIBSON, JJ., concur.