[Civ. No. 22747.   Second Dist., Div. One.   May 13, 1958.]

WILLIAM T. CRESPINEL, Respondent, v. COLOR COR-
PORATION OF AMERICA (a Corporation), Appellant.

Irving A. Bernstein for Appellant.

Bauder, Gilbert, Thompson & Kelly and Gilbert, Thompson & Kelly for Respondent.

FOURT, J.—This is an appeal from a judgment for plaintiff in an action for damages for breach of contract by defendant Color Corporation of America, a corporation.

The agreement of employment was entered into on or about May 14, 1948, by and between plaintiff and Cinecolor Corporation, the previous name of defendant. At the time of the execution of the agreement William T. Crespinel was still a director of Cinecolor Corporation, and had very recently retired as president thereof after the acquisition by the corporation of a motion picture exchange, which constituted an expansion of the scope of the corporation's activities of which Crespinel did not approve. The uncontradicted testimony was that Crespinel had been in the business of color film processing in England and in the United States continuously from 1907; that he was a cofounder of Cinecolor Corporation in 1932; that in 1946 when he became president of the corporation it was operating at a loss, and that thereafter substantial profits were realized.

The agreement covering an initial period from May 15, 1948 through May 14, 1955, was drawn by Graham Sterling, Jr., who at the time was the secretary and attorney and one

of the directors of the corporation; and it contained, among others, the following recitals and provisions:

"WHEREAS, Cinecolor Corporation desires to be able to call upon Mr. Crespinel's extensive experience and knowledge from time to time in connection with the taking and processing of color motion pictures, and

"WHEREAS, Mr. Crespinel has consented to remain as a director of Cinecolor Corporation in order to give the corporation the benefit of his knowledge and experience in the management of its affairs, . . .

"1. Cinecolor agrees to, and does hereby, retain the services of Crespinel as a technical consultant in connection with the taking and processing of color motion pictures as conducted and to be conducted at its plant in Burbank, California and elsewhere as determined by Cinecolor; and Cinecolor agrees to pay Crespinel for such services the sum of Thirteen Thousand Dollars ($13,000.00) per year, payable at the rate of Two Hundred Fifty Dollars ($250.00) per week.

"2. Crespinel agrees to diligently and conscientiously render such services as called upon by Cinecolor to perform, provided that such call for the services of Crespinel shall not require more than twenty-five percent (25%) of the usual business days in any month and shall not, in any event, interfere unreasonably with other business projects and activities of Crespinel. . . .

"5. (as amended by letter dated September 1, 1948) *Crespinel shall not during the term and any extension hereof engage directly or indirectly in the taking or processing of color motion pictures, nor become employed by, advise, consult, or in any manner assist or further the interests of any person, firm or corporation, competitive to Cinecolor*; provided that until such time as Cinecolor shall be prepared to offer a means or method for taking and processing three-color motion pictures in 16 mm., nothing in this section shall preclude Crespinel from engaging in the activities herein mentioned for the sole purpose of producing 16 mm. color prints in 'Kodachrome' or Ansco or other media for television broadcast and nontheatrical release. All discoveries and inventions together with all knowledge and information which Crespinel has heretofore conceived or acquired or shall conceive or acquire during the term of this contract respecting the business of Cinecolor shall be and remain at all times the property of Cinecolor and shall be held by Crespinel in trust and confidence for the sole benefit of Cinecolor, its successors and as-

signs and Crespinel agrees not to divulge or publish or authorize anyone else to divulge or publish either during the pendency of this agreement or subsequent thereto, knowledge of said discoveries or inventions or any technical or other information heretofore acquired or acquired under or in connection with this agreement or any confidential information concerning Cinecolor's business thus acquired. . . .

"6. *Crespinel has been informed and fully understands that in the future it may be necessary for the business of the Corporation that a seat on the Board of Directors be available, as for instance in the event that other financial interests become associated with Cinecolor. In the event that it becomes necessary to provide a seat on the Board of Directors, Crespinel agrees that he will, upon the request of a majority of the Board of Directors forthwith resign as a member of the said Board in order to assist in the conduct of the affairs of Cinecolor and to permit its freedom of action.* . . .

"8. The foregoing constitutes the entire agreement between the parties and there are no agreements, representations or understandings other than as hereinabove set forth. This contract shall be construed in accordance with the laws of the State of California." (Emphasis added.)

Crespinel at no time was called upon to render any services of any kind to defendant corporation. He was told on August 25, 1948, that the other directors wanted to put a banker from New York on the board in his place, and was asked if he would be prepared to resign. The minutes indicate Crespinel indicated his willingness to resign "in favor of anyone considered by the Board to be of particular value to the Board and to the company," and his resignation was accepted.

Pursuant to the terms of said agreement Crespinel was paid the sum of $76,500 and in this action, he was awarded the sum of $14,500, representing the remainder of the $91,000 specified in the agreement ($13,000 per year for seven years at the rate of $250 per week).

Appellant contends that the contract was illegal, void and against public policy; that the contract was unfair and unreasonable to the corporation and may be avoided; and that the trial court erred in excluding from evidence a certified copy of the minutes of a meeting of defendant's board of directors.

Appellant contends that the agreement, in essence, is one where the consideration is illegal in that a director is being bought out of office, and relies upon *Forbes* v. *McDonald*,

54 Cal. 98, as being directly in point. This case was decided in 1880, at a time when the law of California was that a director of a corporation was a "trustee" within the strict rules as presently set forth in Civil Code, sections 2230-2235. The former rule of disqualification of a director to deal in any way with the corporation was found by a State Bar Committee in 1930 to be unreasonably severe and unduly to hamper legitimate business; and this led to the adoption of Civil Code, section 311, in 1931, which in amended form is now Corporations Code, section 820. This section is commented on in Ballantine and Sterling, *California Corporation Laws*, 1949 edition (at pp. 103-104), as follows: "Directors are no longer subject to the disqualification and disabilities of a trustee when contracting with or on behalf of the corporation as declared in various cases heretofore. *Directors are fiduciaries, but are not strictly trustees.*" (Emphasis added.) It is further stated (at p. 106), "The general fiduciary rule is that the burden of proof as to reasonableness and fairness is on the fiduciary, but this is to be regarded as an elastic rule of common law rather than of statute. This section does not attempt to apportion the burden of proof under different circumstances, for example as to the fairness of a loan by directors to a corporation, or to provide what the effect of nondisclosure of adverse interest may be. Such questions must be left to the dictates of policy and fairness rather than to any hard and fast rule. There is not necessarily any presumption of fraud, inadequacy of consideration or unfairness unless the circumstances call for it.

"It had been held that the director of a corporation is not absolutely precluded from dealing directly with the corporation of which he is a director, if the corporation is represented by an independent majority, although any such transaction is subject to scrutiny and is voidable for any violation of his duty as director. This was true in spite of his failure to disclose his adverse interest unless the corporation sustained some detriment or he obtained some undue advantage."

In the contract Crespinel bound himself to render certain services as requested by the corporation and not to "engage directly or indirectly in the taking or processing of color motion pictures, nor become employed by, advise, consult, or in any manner assist or further the interests of any person, firm or corporation, competitive to Cinecolor" and the trial court made certain specific findings of fact, as follows: "that the plaintiff herein did give good and valuable consideration

for the promises of the defendant under said agreement"; "that at all times mentioned in the complaint and answer, plaintiff did intend to perform the services contemplated by said agreement, and that plaintiff did in fact render services and hold himself ready to render services on behalf of defendant corporation and pursuant to the terms of said agreement"; "[t]hat it is not true that plaintiff violated his fiduciary duty to the defendant corporation or to its stockholders"; and "[t]hat it is not true that plaintiff used his position as President or Director to induce the Board of Directors to approve and ratify said agreement."

The agreement in question does not come within the prohibition stated in *Trumbo* v. *Bank of Berkeley*, 77 Cal. App.2d 704, 709 [176 P.2d 376], where the court stated: "There can be no doubt that a contract by a director or shareholder, at least of an existing corporation, whereby it is agreed that a designated person will be put or maintained in office, or by which, in any other way, a director attempts to contract away his discretionary vote on the board of directors is violative of public policy and is void." The agreement in the case before us, by its terms, required the exercise of discretion in a determination by the board of directors that it was *"necessary for the business of the Corporation* that a seat on the Board of Directors be available," and Crespinel agreed to resign upon request of a majority of the board of directors only *"in order to assist in the conduct of the affairs of Cinecolor and to permit its freedom of action."* (Emphasis added.)

The case of *Mitchell* v. *Dilbeck*, 10 Cal.2d 341 [74 P.2d 233], is cited by appellant to indicate that it is a violation of trust on the part of a director to make a profit in the matter of his resignation. In that case, the court also stated (at pp. 347-348), "There is not a single statement in the written agreement of the parties which can be construed as an obligation on the part of the respondent to procure the resignation of any of the directors. . . . It is only by going completely outside the agreement of the parties, . . . that such an obligation can be 'read into' the written agreement. . . . Such acts on his part were wholly outside the written agreement of the parties and could not, therefore, affect the legality of such agreement."

There is no evidence in the record that Crespinel in any way contracted away his discretionary vote on the Board of Directors, and on the contrary, there is substantial evidence

that Crespinel in the exercise of discretion, acted in good faith and for what he regarded to be the best interests of the corporation in tendering his resignation.

Appellant further contends that the contract was unfair to the defendant corporation and may be avoided on this basis. However, there is substantial evidence to support the findings of the trial court that "the plaintiff herein did give good and valuable consideration for the promises of the defendant under said agreement," and that "plaintiff did intend to perform the services contemplated by said agreement and that plaintiff did in fact render services and hold himself ready to render services on behalf of defendant corporation and pursuant to the terms of said agreement." There is no evidence that Crespinel at any time participated in any activity competitive to the defendant corporation, and the statutory prohibition of Business and Professions Code, section 16600, in our opinion is not applicable to the facts of this case.

The certified copy of the minutes of the board of directors was sought to be introduced to establish a defense to performance on the basis of impossibility of performance and frustration of purpose by a discontinuance of the color processing activities of defendant corporation. The trial court made a specific finding that "if the defendant corporation discontinued its color processing activities as alleged on or about July 1, 1954, it did so for its own benefit and convenience and not due to factors beyond its control.

"That it is not true that the rendition of services by plaintiff under said agreement was made impossible either due to the involuntary discontinuance of its color processing activities or due to any other reason."

The refusal to admit the certified copy of the minutes under the circumstances, was not prejudicial.

The judgment is affirmed.

White, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied June 6, 1958, and appellant's petition for a hearing by the Supreme Court was denied July 9, 1958.