**HOLMES, Admr., Plaintiff-Appellee, v. REPUBLIC STEEL CORPORATION, et, Defendant-Appellant.**
**HOLMES, Admr., Plaintiff-Appellant, v. REPUBLIC STEEL CORPORATION, et, Defendant-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

Nos. 20640 & 20641.   Decided November 15, 1948.

David Perris, Cleveland, for plaintiff-appellee—appellant.

Jones, Day, Cockley & Reavis, Luther W. Day, Earl W. LeFever, Curtis C. Williams, Cleveland, for defendants-appellants—appellees.

Thomas F. Patton, Cleveland, for defendant Republic Steel Corporation.

## OPINION

By HURD, PJ.

This is a derivative action in equity for cancellation, accounting and equitable relief, commenced in the court of common pleas of Cuyahoga County by Hannah S. Holmes who was then the owner of 12 shares of the common capital stock of the Republic Steel Corporation, against said corporation, and Tom M. Girdler, chairman of the board of directors and chief executive officer. While the suit was pending in the common pleas court the plaintiff died and the action was revived in the name of Godfrey Holmes, her administrator, as substitute plaintiff. For purposes of convenience we shall hereafter refer to the individual defendant as "Girdler" and the corporate defendant as "Republic."

The issues as presented to this court for decision arise by reason of two separate appeals on questions of law and fact as follows:

Appeal No. 20640 is by defendant Girdler and is from the judgment of the common pleas court which held invalid and without corporate authority a payment of $51,000.00 to him by Republic in addition to his salary of $175,000.00 for the year 1940.

Appeal No. 20641 is by the plaintiff and is from that part of the judgment of the trial court which held valid a pension plan set up April 15, 1937 by Republic for 80 corporate officers and their employees including the individual defendant Girdler.

In the original action the plaintiff also attacked the legality of the fixed salaries paid by Republic to Girdler, alleging that the same were "excessive, unreasonable and unconscionable." The trial court found for the defendants on this issue and from that portion of the court's judgment no appeal has been filed.

These appeals are submitted de novo upon the pleadings as amended and upon the testimony taken and evidence presented before a master commissioner appointed by this court for that purpose upon application duly made and allowed.

The record before us is voluminous and presents a wealth of factual data contained in three large volumes of testimony and documentary evidence in the form of numerous exhibits. Many witnesses testified for defendants before the

master commissioner who were not called to testify in the trial below, so that by reason of the additional evidence presented in this court we have before us a much more extensive record than that produced in the original trial of the case in the common pleas court.

There are two principal questions for our determination:

1. Whether or not the additional compensation paid by Republic to Girdler at first in the form of an annuity, later reduced to cash, in the sum of $51,000.00 was unlawful as an ultra vires act. (No. 20640)

2. Whether or not a contract between Republic and Girdler executed in the year 1937 in pursuance of a general pension plan adopted by the company was a valid exercise of corporate powers. (20641)

As hereinbefore indicated, the trial court decided the first question in favor of plaintiff and rendered judgment against defendant Girdler for the benefit of Republic in the sum of $69,225.86 (which included interest) and costs, as having been paid "illegally and without authority."

The common pleas court decided the second question in favor of defendant Girdler, finding "the pension plan entered into is a valid, binding and enforcible contract."

In arriving at its conclusions on the second question, the court of common pleas held the pension plan valid including the contract with defendant Girdler on three grounds, namely:

(1) That the plan was expressly approved by the requisite vote of the stockholders at a meeting at which approximately 5500 shares were represented in person and 3,000,000 shares were represented by proxy and that thereafter, the board of directors by appropriate action authorized the execution of the necessary documents to carry into effect the plan approved by the stockholders and that all of the proceedings in respect thereof were in accordance with the applicable statutes of New Jersey, the domiciliary state of defendant Republic.

(2) That the plan was lawfully adopted under the implied powers of the corporation, even if it were not expressly authorized by the statutory law of New Jersey.

(3) That the doctrine of estoppel applied in that plaintiff's decedent had executed a proxy covering her shares which by her authority was voted in favor of the plan.

We have examined the record, considered the arguments and briefs of counsel and have unanimously concluded that the contract between Republic and Girdler, executed in the year 1937, in pursuance of a general pension plan adopted by the company, was a valid exercise of corporate powers and that therefore the decree should be for defendants as in com-

mon pleas court on appeal No. 20641 on the three grounds aforestated, and upon authority of the statutes and cases cited and quoted in the opinion of Orr, J on this phase of the case, as follows:

Title 14:9-1 General Corporation Law of New Jersey; Watson v. Watson Mfg Co. 30 N. J. Equity 588; Gurney v. Atlantic & Great Western Ry Co. 58 N. Y. 358.

Title 14:7-1 New Jersey Corporate Act; Heinz v National Bank of Commerce 237 Fed. 942; Gilbert v. N & W Ry Co. 171 S. E. 814; Mabley & Carew Co. v. Borden, 129 Oh St 335.

This leaves for our further consideration only the first principal question above set forth, namely the matter of the additional compensation paid to Girdler by Republic during 1940.

There are certain facts concerning which there appears to be no dispute and which may be detailed briefly as follows:

A company known as Republic Iron & Steel Company was organized in 1899 under the laws of New Jersey. Thereafter, on April 8, 1930, a merger was effected which included Central Alloy Steel Corporation, Interstate Iron & Steel Company; Donner Steel Company Inc; and The Bourne-Fuller Company, with the corporate name of Republic Steel Corporation. Thereafter Republic acquired a number of other companies so that it now ranks as the third largest steel company in the world.

Plaintiff's Exhibit 17 which is the annual report of Republic for the fiscal year ending December 31, 1940, shows that the business of Republic ranges from the mining of iron ore, coal and other raw materials to the manufacture, sale and distribution of a widely diversified line of finished and semi-finished iron and steel products and byproducts.

The same annual report also shows that in 1940 the corporation had a gross income in excess of three hundred million dollars, a gross profit in excess of sixty-two million dollars, a consolidated net income after all charges in excess of twenty-one million dollars, and a payroll in excess of ninety-seven million dollars and that in the same year it paid taxes in excess of sixteen million dollars and paid dividends on its three classes of stock aggregating in excess of six million eight hundred dollars. It had assets of a value in excess of four hundred million dollars and employees numbering in excess of sixty thousand persons who were employed in thirty-five different states.

The report shows also that the corporation has plants in Cleveland, Youngstown, Warren, Niles, Canton, Massillon, Newton Falls and Elyria, Ohio; Buffalo, Brooklyn and Troy,

New York; Chicago, South Chicago and Moline, Illinois; Gary and Indianapolis, Indiana; Monroe, Michigan; Pittsburgh, Beaver Falls and Philadelphia, Pennsylvania; Hartford Connecticut; Birmingham and Gadsden, Alabama, and Hamilton Ontario, Canada. It had warehouses and sales offices in nearly every state of the Union. It had eleven iron ore mines in Minnesota, Michigan, New York and Alabama and eight coal mines in Pennsylvania and Alabama. It also owns or controls fifteen subsidiary companies engaged in allied businesses, and has a substantial investment in several others. According to the same report, in 1940 Republic had outstanding 282,303.5 shares of its Prior Preference Stock, 119,597 shares of its convertible Preferred stock and 5,834,289.9 shares of its common stock.

The defendant, Girdler, came to Republic on April 8, 1930 as Chief Executive Officer. At first he was president and chairman of the board of directors. In 1937 he gave up the office of President and was retained in his position as chief executive officer of the corporation in the capacity of chairman of the board of directors and chairman of the executive committee. Since 1930 to the time of trial herein (except for an interim during World War II), he devoted his entire time to the duties of his office and the business of the corporation.

The record before us discloses in great detail the activities of the defendant in the active management of the affairs of the corporation and in the direction of the officers of Republic so that there can be no doubt on the uncontradicted testimony that defendant Girdler was in fact, as well as in name, the directing head of the corporation's business at all times during the period under consideration, under the authority of the board of directors.

At a meeting of the board of directors held April 10, 1940, in New York City, the following resolution was adopted:

"The chairman submitted a list of the officers of the corporation, with their present salaries; Mr. T. M. Girdler retired from the chair and Mr. R. J. Wysor presided. Upon motion duly made, seconded and carried, Mr. Girdler not voting, the salary of Mr. T. M. Girdler as chairman was fixed at the rate of $175,000.00 per year, **plus any additional amount, if any, as the board of directors may determine prior to Dec. 31, 1940.**" (Emphasis ours.)

Thereafter, in a meeting of the board of directors held on Dec. 23, 1940, in New York City, the following resolution was adopted:

"The chairman stated that he desired to present to the meeting the desirability of having the corporation purchase deferred annuity contracts, having no cash surrender value, on the lives of the five chief executive officers of the corporation in an aggregate amount not exceeding $149,500.00 and the delivery of such contracts to said officers as additional compensation for the calendar year 1940."

At the same meeting the following resolution was adopted:

"RESOLVED, that Republic Steel Corporation purchase deferred annuity contracts, having no cash surrender value, on the lives of the following named officers of the corporation, in the respective amounts set opposite the name of each officer, to-wit:

| | |
|---|---|
| Tom M. Girdler | 50,000.00 |
| Rufus J. Wysor | 37,000.00 |
| Norris J. Clarke | 25,000.00 |
| Charles M. White | 25,000.00 |
| Myron Arms Wick | 12,500.00" |

The resolution then provided for the execution of the contracts and payments of the premiums required and concluded:

"RESOLVED, further, that the treasurer of the corporation be * * * authorized and directed to pay to Tom M. Girdler as further additional compensation for services rendered by him to the corporation during the calendar year 1940, the sum of $1,000.00."

The record shows that later the annuities being found taxable they were surrendered and cash paid to the various officers including Girdler, in lieu of the annuities. On this basis the total additional compensation paid to defendant Girdler was $51,000.00 during the year 1940.

During the course of the trial the general counsel for Republic explained the nature of the annuity contract and how it was entered into and terminated, as follows:

"In 1940 the directors, in accordance with the reservation they made at the time they fixed the salary for the year, voted additional compensation because of the excellent showing

of the company for that year; but instead of paying it in cash they delivered an annuity contract for which the company expended $50,000.00. That was done mainly on my advice to the directors in the hope that there would be no immediate income tax payable on that, but the income tax would be deferred until the annuity was received later under certain existing rules. I thought that could be done. However, when the returns were examined, the Federal Revenue Inspectors assessed the deficiency, claiming that it was additional compensation taxable immediately. We went to the Board of Tax Appeals and the Board upheld the Commission. As a result these men were called upon to expend considerable money in paying the deficiency taxes, so they surrendered the annuity to get the money to pay the tax, so it wound up as though they got the money and paid the tax in the first instance."

In this appeal we are not called upon to determine whether or not the total compensation paid to defendant Girdler during 1940 was reasonable under all of the circumstances because the parties themselves have stipulated in respect thereof as follows (Stipulation No. 2, page 645 of record)

"That the total of the amounts received by the defendant Tom M. Girdler for the year 1940 - - consisting of the sum of $175,000.00 paid to him in regular monthly installments during that year 1940, and consisting further of the annuity purchased for him at a cost of $50,000.00, as well as the further sum of $1,000.00 paid in cash during December of 1940 - - was wholly reasonable in amount, having regard to the value of the services rendered by him as chairman of the board of directors of the defendant Republic Steel Corporation; and that there is no issue whatsoever herein, either as regards the reasonableness of the sum of $175,000.00 mentioned in the minutes of the meeting of the board of directors of April 10, 1940, or as regards the total figure of $51,000.00 mentioned in the minutes of the meeting of the board of directors of Dec. 23, 1940."

Neither do we have any question of claimed fraud or deceit in respect of the action taken, there being no charge by plaintiff that the conduct of the directors in awarding additional compensation was a fraud upon the corporation or its stockholders in any manner whatsoever. On the contrary, it was stated positively that no such claim was being made.

However, counsel for plaintiff contend that the sum of $51,000.00 was paid Girdler without authority; that said amount by way of additional compensation "was not fixed according to law and was otherwise illegal;" that in the allowance and payment thereof the directors were guilty of ultra vires acts. On the other hand, the defendants contend that the 1940 plan of additional compensation was lawful and not ultra vires; that the rate of Girdler's compensation was properly established and that it was "wholly proper for the board of directors by prior resolution to reserve the right to award additional compensation commensurate with corporate success."

At the time of this action by the directors, Chapter 3 of the General Corporation Laws of the State of New Jersey as revised in 1937, defining the powers of New Jersey Corporations in respect of appointment of officers and the fixing of their compensation reads in part as follows:

"14:3-1 Powers Generally: Every corporation shall have power to:
\*    \*  .  \*

(3) Appoint such officers and agents as the business of the corporation may require and fix their compensation \* \* \*."

The pertinent part of the by-law adopted by the board of directors of Republic, under the provisions of the New Jersey statute above quoted, is by-law No. 11 as follows: (Excerpts from By-laws of Republic Steel Corporation, May 30, 1930, defendant Girdler's Exh. 18):

"The officers of the Company shall be a chairman of the board of directors, a president (the foregoing to be chosen from the directors) one or more vice-presidents \* \* \*. The term of office of every officer shall be from the date upon which he shall be chosen, until the first meeting of the directors after the next annual meeting of the stockholders, and until his successor in office shall be chosen. \* \* \* The compensation of all officers shall be fixed by the board of directors or executive committee."

By-Law No. 12 defining the duties of the chairman of the board is as follows:

"No. 12. The chairman of the board shall be the chief executive officer of the corporation. He shall preside at all meetings of the stockholders and of the board of directors

and of the executive committee and shall perform all such other duties and exercise all such other powers as are usually incident and pertain to the chief executive officer of a corporation, as well as such other duties and powers as the board of directors may from time to time prescribe." (Volume 3 of record, Deft's Exh. 18)

The general counsel of Republic also explained the action taken in the directors' meeting of April 10, 1940, based upon the discussion which took place in his presence at that meeting, and in respect thereof he testified as follows:

"The directors * * * stated that the company had been doing increasingly well and that the outlook for the year was very good. They thought that the key people of the company should be rewarded for the performance of the company if their expectations were realized. They did not, however, want to increase the fixed minimum obligations of the company until they saw what the results of the year would be."

The same witness testified further:

"The directors discussed among themselves and with me, and in my presence, the fact that the prospects for the year looked good and they expected to make a considerable amount of money unless something unforeseen developed. I recall one or two mentioning the fact that war had broken out in Europe and that if that should cease suddenly or something should happen, the realization might not come true and they stated that if the company did better than the year before, they wanted to and would pay extra compensation for the year to the key employees of the company and they said that they did not at that time want to determine the amount; they wanted to wait until the year's results were ascertainable before they fixed the amount that they would pay in the event the company did better than the year before."

With respect to the preparation of the corporate minutes after the action taken at the meeting, the witness testified:

"The words 'if any' were inserted of course, by myself. I intended by those words in a clear and concise manner to indicate that if the company had a good year in 1940, that is a good a year or a better year than they had in 1939, the corporation by this action would unequivocally and definitely bind itself to pay additional compensation to Mr. Girdler and

to the other eleven people involved, in December, 1940, based on the results of the year, the amount to be determined by the board on the basis of the efforts set forth by the employees and the results of the year; and that if the corporation did not have a good year in 1940, that is, if the year was less prosperous than it was in 1939, there would be no obligation on the part of the directors to pay additional compensation to Mr. Girdler or the other men involved in 1940."

We have thus detailed the testimony of the general counsel for Republic at some length because we find upon an examination of the entire record complete corroboration thereof in substance by all of the directors present at the meeting of April 10, 1940, who testified on this appeal.

With respect to defendant Girdler, we find credible evidence undisputed in the record that during 1929 his last year with Jones & Laughlin Steel Company, he received a total compensation in excess of $359,000.00 and that there was a general understanding when he came to Republic at a reduced salary of $150,000.00 per annum in 1930, that dependent upon the success of his efforts and the financial success of the corporation there would be compensation in addition to the regular salary and that a plan of additional compensation would eventually be established, dependent upon results accomplished by way of increased corporate savings. The defendant, Girdler, testified in substance to the effect that he was absent from the meeting room on April 10, 1940 when the subject of his own compensation was under consideration and that when he returned to the room he was informed by the spokesman for the board that his compensation had been fixed at $175,000.00 and that the directors had decided that if the corporation had a "good year" and prospects looked very good, there would be additional compensation for the key employees of the company, but that no amount was fixed and there was no discussion of the amount; that he considered himself a key employee and that he worked in reliance on that statement and that he fully anticipated he was going to have additional compensation for the year 1940. The record shows that similar resolutions were adopted in favor of the president, the vice-president in charge of sales; the vice-president in charge of operations; and that each officer respectively refrained from voting on the resolution which affected him. All of this testimony stands undisputed in the record. However, counsel for plaintiff points to an answer by Girdler while under cross-examination in the trial below, incorporated in the record before us, to the effect that he did

not have an agreement for additional compensation and argues that there was not an agreement either express or implied, for want of mutuality. We think this point is not well taken on the facts. The question asked of the defendant called for a conclusion of mixed law and fact and the defendant by way of explanation of his answer on this appeal clearly indicated a reliance upon the promise of the directors for additional compensation in some amount to be fixed by the directors within their discretion, contingent upon increased earnings for the year in question. This explanation is entirely compatible with the facts, as shown by the record on this appeal.

We hold the view which was also expressed by the trial court, that courts of equity in consideration of issues such as are here presented, must consider each case separately on its merits, based entirely upon the particular set of facts as disclosed by the evidence applying thereto, well defined principles of equity jurisprudence.

Considerable discussion was had by counsel in this case with respect to the words "fix their compensation" as the same appears in the general corporation laws of New Jersey and the words "compensation shall be fixed" as the same appear in By-law No. 11 of Republic. Counsel for plaintiff argue in effect that the meaning of the word "fix" is such as to render void that part of the resolution adopted by the board of directors in April, 1940, which leaves as a matter of discretion with the board the allowance of additional compensation within the year. We do not agree with this contention.

In our opinion the word "fix" as here used, taking into consideration the entire context, merely connotes "to determine" "to allow" "to settle" or words of like import. If we construe the resolution in its entirety, giving to the words their plain ordinary meaning, we must give effect to the words **"plus such additional amount, if any, as** the board of directors may determine prior to December 31, 1940." Hence the word "fix" which by the terms of the resolution applied to the words "salary at the rate of $175,000.00 per year" must have equal application to the words **"plus such additional amount * * *."**

It is our conclusion based upon the evidence that the additional compensation provided for by the words "plus determine, prior to December 31" constituted nothing less than an implied contract for payment of reasonable compensation, in addition to the stated salary, which was considered the minimum, contingent upon the discretion of the

members of the board of directors as to amount and conditioned upon whether or not the earnings of the company justified such action based upon the factors involved.

The facts of the instant case are closely analogous to the facts in the case of Church v. Harnit, 35 Fed. 2nd 499, decided by the Circuit Court of Appeals 6th Circuit (Certiorari denied, 281 U. S. 732), the 6th paragraph of the syllabus being as follows:

"6. President of corporation held entitled to retain bonus payment even though allowance made by board of directors was void where total compensation was reasonable and there was no fraud, since under such circumstances president should not be required to refund bonus payment and seek relief on theory of quantum meruit."

In the same case, commencing on page 501, the court speaking through Hickenlooper, J, says:

"From the very inception of defendants' association with the company, it was understood by each of them, as well as by the board of directors from time to time that the fixed salary should be considered as the minimum compensation for services rendered and that each of the defendants should be entitled to receive additional allowances more fully compensating them for their services, in the event that the affairs of the corporation prospered. Bonuses of varying amounts were paid to one or more of the defendants each year from 1901, increased in amount with the increasing success of the business, and may be said to have no more than brought the total compensation paid, salaries and bonus, to a close approximation of what was paid elsewhere for similar services in the same line of business. There is no contention on the part of the plaintiff appellant that the defendants received more in the way of salary and bonus than the fair value of their services. The business was managed with marked efficiency. Each of the defendants applied himself with peculiar energy and ability to his particular task. Each served through the succeeding years with the understanding and expectation that he would receive additional compensation if his loyalty and industry merited and the success of the business warranted such allowance. The company would now be estopped to deny that such was the contract of employment. Letta v. Cincinnati Iron Steel Co., 285 F. 707 (C. C. A. 6). Otherwise expressed, the agreement of employ-

ment was not for a fixed salary but for a minimum salary, with the maximum to be determined upon principles of quantum meruit and consistent with the success of the business.

Under the foregoing circumstances, we are of the opinion that the corporation, in whose interest and on whose behalf the plaintiff files his bill, must be held to have contracted with the defendants for the payment of reasonable additional compensation or bonus. There is nothing illegal or against public policy in such a contract. Cf. National Loan & Investment Co. v. Rockland Co. 94 F. 335 (C. C. A. 8); Metropolitan Rubber Co. v. Place, 147 F. 90 (C. C. A. 2); Tietsort v. Irwin 9 Fed. (2d) 65 (C. C. A. 6); Rowland v. Demming Exploration Co. Tr. 45 Idaho 99, 260 P. 1032; Girard v. Case Bros Cutlery Co. 225 Pa. 327, 74 A. 201; Putnam v. Juvenile Shoe Corp. 307 Mo. 74, 269 S. W. 593, 40 A. L. R. 1412.

The one essential requirement in such case is that the services shall not only be valuable but that they shall have been rendered with the understanding and intention that they were to be paid for or under such circumstances as would raise a fair presumption of such intention. Fitzgerald & Mallory Const. Co. v. Fitzgerald, 137 U. S. 98-111, 11 Sup. Ct. 36, 34 L. Ed. 608; Pew v. First National Bank 130 Mass 391, 395; St. L. F S & W R R Co. v. Tiernan 37 Kan. 606, 621, 622, 15 P. 544."

Without repeating the facts at length it would appear that the facts in the case at bar are even stronger in favor of the officer-director than those involved in Church v. Harnit, particularly in view of the express language used in the resolution. It is true that the history of Girdler's relations with Republic do not extend over a like period but in other respects the analogy is clear.

Another cause in point is National Loan & Inv. Co. v Rockland Co 94 Fed. 335, decided by the U. S. Circuit Court of Appeals 8th Cir. where the court speaking through Sanborn, J., says in part at page 338:

"But such officers who have rendered their services under an agreement either express or implied with the corporation, its owners or representatives, that they shall receive reasonable but indefinite compensation therefor, may recover as much as their services are worth; and it is not beyond the powers of the board of directors to fix and pay reasonable salaries to them after they have discharged the duties of their offices. Missouri River Co. v. Richards, 8 Kan. 76, 81; Rogers v. Railway Co. 22 Minn. 25, 27; Railroad Co v. Tiernan

(Kan. Supp) 15 Pac 544, 553; Stewart v. Railroad Co. 41 Fed. 736, 739; Rosborough v. Canal Co. 22 Cal. 557, 562."

See also Dalton v. Brush Elec. Light Co. 7 O. C. D. 141, 142, affirmed without opinion by the supreme court, 41 W. L. B. 237, and the New Jersey cases of McKann v. Irvington, 133 N. J. L. 63, 66, 42 A. (2d) 391-393; affirmed 133 N. J. Misc. 575; 45 A. (2d) 494 (1945). Tice v. City of New Brunswick, 73 N. J. L. 615, 42 A. 108 (1906) and Warren v. Hudson County 23 N. J. Misc. 252, 263, 43 A. (2d) 785, 792.

The record shows that the services of defendant Girdler were valuable in his capacity as chairman of the board and chief executive of the corporation and that the services were rendered in reliance upon the promises of the directors as indicated by their action at the meeting of April 10, 1940 and as exemplified by the resolution in evidence.

We have heretofore referred to the stipulation that the sum paid under color of the resolution under all of the circumstances was reasonable and that it is conceded that there was no element of fraud in the transaction. We are, therefore, of the opinion that the action of the directors was not ultra vires either under the statutory law of New Jersey, the by-laws of the corporation, or under principles of equity jurisprudence.

It is our opinion as heretofore indicated that the principles enunciated in the cases of National Loan & Invest. Co. v. Rockland Co 94 Fed. 335, and Church v. Harnit, 35 Fed. (2d) 499, fully support this conclusion. It should be observed we think, that the trial court in attempting to distinguish between these cases and the facts of the instant case did not have before it the additional evidence which we have before us on this appeal.

The claim has been made by plaintiff that this court cannot consider the testimony of the directors as to that which was said and done at the meeting of the board of directors on April 10, 1940, on the ground that such parol evidence tends to contradict or vary the terms of a written agreement. We are not in accord with this view. The testimony of the directors was not introduced for the purpose of varying or contradicting the terms of a written contract. It is our view that the agreement of the parties was in fact consummated at the meeting of April 10, 1940 so that it is competent to show by parol evidence what transpired at the meeting. The corporate resolution was prepared at a later date by the general counsel and is in briefest form; merely prima facie evidence of the proceedings and the conclusions reached at the meeting. We do not find

any provisions in the laws of New Jersey or the By- laws of the corporation which would indicate that the resolution on its face is ultra vires. However in a case such as this, where the action of the board of directors is challenged, evidence of that which was said and done at the meeting is competent to show the actual facts. This is particularly true in cases where the true meaning is indefinite, ambiguous or if the minutes appear on the face to be incomplete or otherwise fail to show what actually transpired. See 5 Fletcher Cyclopedia Corp. Sec. 2198 pages 532, 33.

Referring once again to the case of Church v. Harnit, 35 Fed. (2d) 499, the court said (at page 502):

"In the instant case there was an express understanding between the corporation and each of the defendants as to additional compensation which is entirely consistent with the also express contract as to a minimum compensation. **The evidence of this understanding was not introduced for the purpose of varying a written contract but rather for the purpose of defining the true terms of employment.** The contracts of all, with the possible exception of Harnit lay in parole and it was permissible to show the extent to which the fixed salary was intended to compensate for services as establishing the terms of such contract. No formal action by the board was necessary. It is sufficient if there was a clear and well-defined understanding. Chabot & Richard v. Richard, 109 Me. 403, 84 A. 892; Young v. U. S. Mtge & Tr. Co. 214 N. Y. 279, 285, 108 N. E. 418. In re Super-Trading Co., 22 F (2d) 480 (C. C. A. 2)."

We have here a case of a prior resolution in April, 1940, reserving the right to award before the end of the year additional compensation or bonus, contingent in amount within the discretion of the board of directors and dependent upon and commensurate with corporate earnings with actual notice thereof to defendant Girdler, and acceptance thereof by him. In our opinion the gross income of the corporation in excess of three hundred million dollars, the gross profit in excess of sixty two million dollars, the consolidated net income, after all charges, in excess of twenty-one million dollars certainly would be sufficient to justify the additional award in December, based upon the previous resolution adopted in April.

In our opinion, the adoption of the prior resolution in April, 1940, evidentiary of the understanding of the parties providing for a minimum salary 'plus any additional award, if any, as the Board of Directors may determine prior to December

31, 1940,' had the effect of validating the action later taken in December, 1940, in pursuance thereof, so long as such action was free from any taint of fraud and the additional amount allowed by way of additional compensation or bonus was in all respects reasonable under the facts and circumstances then and there existing.

Furthermore, the record shows here, as in Church v. Harnit, supra, based on results accomplished, that the business was managed with marked efficiency; that the total compensation paid, both salary and bonus, was a close approximation of that which was paid elsewhere for similar services in the same line of business, and that there is no contention on the part of the plaintiff appellant that defendant Girdler received more in the way of salary and bonus than the fair value of his services.

We think that on principle and authority the action of the directors in awarding additional compensation, based upon the record before us must be sustained.

It is our conclusion based upon the evidence before us on this appeal that this court of equity would not be justified in setting aside the award of additional compensation in the absence of a claim that the same was unreasonable or that there was fraud in the transaction. It being stipulated that the amount was reasonable and it being conceded that there was no fraud involved, we are of the opinion that the defendants are entitled to a finding and decree in their favor on appeal No. 20640.

For the reasons stated, an order and decree may be entered finding for defendants on both appeals (Nos. 20640, 20641). Judgment accordingly. A journal entry may be submitted in accordance herewith. Exceptions allowed to all proper parties.

MORGAN, J, SKEEL, J, concur.