Jeanne KOSTER, Plaintiff,

v.

Lingan A. WARREN et al., Defendants.

No. 37682.

United States District Court
N. D. California, S. D.

Sept. 11, 1959.

Garry, Dreyfus, McTeenan & Keller, San Francisco, Cal., Sidney L. Garwin, New York City, of counsel, for plaintiff.

Pillsbury, Madison & Sutro, Turner H. McBaine, Donald G. McNeil, San Francisco, Cal., for defendants Safeway Stores, Incorporated, and Robert A. Magowan.

McCutchen, Doyle, Brown & Enersen, Norris M. Doyle, Burnham Enersen,

Bryant K. Zimmerman, San Francisco, Cal., for defendant Dwight M. Cochran.

W. Burleigh Pattee, Robert W. Tallman, Chickering & Gregory, San Francisco, Cal., for defendant Chester N. Sanders.

Ackerman, Johnston, Johnston & Mathews, George H. Johnston, Willard P. Norberg, San Francisco, Cal., for defendant Lingan A. Warren.

William T. Selby, Ventura, Cal., for defendant Milton L. Selby.

HARRIS, District Judge.

In this derivative action under Rule 23(b) F.R.Civ.P., 28 U.S.C.A.,[1] brought by a stockholder on behalf of Safeway Stores, Inc. against certain directors and former officers of the corporation, defendants have moved to require plaintiff to post security pursuant to Section 834 of the West's Ann. California Corporations Code, in the amount of $240,000. In order to prevail on their motions, defendants must prove that there is "no reasonable probability that the prosecution of the cause of action alleged in the complaint against the moving party will benefit the corporation or its security holders."

Plaintiff has alleged three causes of action in her complaint: The first cause is based upon long-term contracts entered into between Safeway and four former officers and directors who are employed as consultants. The complaint charges the contracts were given in violation of fiduciary obligations and the payments are for non-existent services which constitute waste.

The second cause seeks to recover $75,000 paid by Safeway on behalf of Warren, its former president, who was fined this sum in a criminal anti-trust action at Fort Worth.

The third cause is directed against the sale of Beverage Distributors, Inc. for a sum less than the true value of the stock.

[1] "In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly be asserted by it, the complaint shall be verified by oath * * *."

In addition to the individual defendants, Safeway itself has joined in the present motion and is defending the action at the behest of the present board of directors.

Since the corporation is involved in all three causes of action, its position will be considered at the outset. The several defenses it advances are applicable, in most instances, to the individuals named as defendants. If there is no reasonable probability that plaintiff will prevail against the corporation, the legal reasons for reaching such a conclusion are equally applicable to the individual defendants.

Safeway, through affidavits and the testimony of the several former officer-directors involved, has explained the basis for entering into consulting contracts with Warren, Selby, Cochran and Sanders. The stages, commencing with Warren's retirement from the presidency and the elevation of Selby and the promotion of Sanders and Cochran, to the resignation of the latter officers and their employment as consultants cover many months in the life of the corporation and tell a story of a modification of policy which is reflected in the shifts in personnel. At each stage in the corporate transition, the action of the board of directors was approved by a vote of the stockholders. And since the officers in question have become consultants, they have refrained from competing with Safeway and have consulted, or been available for consultation pursuant to their contracts. The facts at the recent hearing on motion of defendants for security do not indicate a reasonable probability that plaintiff will prevail on the first cause of action which attacks the contracts.

Apart from the merits of the controversy, defendants contend, as a matter of law, that plaintiff cannot prevail because:

(a) She is estopped by her approval of the Warren agreement at a stockholders' meeting, October 3, 1955;

(b) She is barred by the approval of the stockholders;

(c) She is barred under Rule 23(b) F.R.Civ.P. by her failure to demand relief from the directors and shareholders;

(d) She is barred because new and disinterested directors have reviewed and approved the challenged contracts;

(e) She is barred by laches.

Defendants' position is fortified with respect to the above defenses, in the order indicated under the following subdivisions:

(a) Estoppel: Gray v. Aspironal Laboratories, 5 Cir., 24 F.2d 97; Holmes v. Republic Steel Corp., 84 Ohio App. 442, 84 N.E.2d 508;

(b) Stockholder approval: McClean v. Bradley, 6 Cir., 299 F. 379;

(c) Rule 23(b) F.R.Civ.P.: Haffer v. Voit, 6 Cir., 219 F.2d 704, certiorari denied Ames v. Mengel Co., 350 U.S. 832, 76 S.Ct. 66, 100 L.Ed. 743; Bruce & Co. v. Bothwell, D.C., 8 F.R.D. 45;

(d) Director approval: Findley v. Garrett, 109 Cal.App.2d 165, 240 P.2d 421; Olson v. Basin Oil Co., 136 Cal.App. 2d 543, 288 P.2d 952;

(e) Laches: De Lamar Mines of Montana v. Mackay, 9 Cir., 104 F.2d 271; Warner v. Morgan, 81 Misc. 685, 143 N.Y.S. 516.

Defendants likewise point out that the Warren contract is valid and enforceable (Mooney v. Willys-Overland Motors, Inc., 3 Cir., 204 F.2d 888, 39 A.L.R.2d 566; Crespinel v. Color Corp., 160 Cal.App.2d 386, 325 P.2d 565); that there is no spoliation issue involved in the litigation (Winkelman v. General Motors Corporation, D.C., 39 F.Supp. 826; Rogers v. Hill, 289 U.S. 582, 53 S.Ct. 731, 77 L.Ed. 1385).

The facts surrounding the contracts of Selby, Sanders and Cochran likewise point to their validity and the lack of probability that the first cause of action will benefit Safeway or its stockholders.

The explanation presented by defendants with respect to the payment of the Warren fine—following his change of plea from not guilty to nolo contendere—

place the action within the doctrine enunciated in McQuillen v. National Cash Register Co., 4 Cir., 112 F.2d 877; cf. Simon v. Socony-Vacuum Oil Co., 179 Misc. 202, 38 N.Y.S.2d 270. Safeway received consideration from Warren in return for its payment of his fine.

The third cause of action, when the evidence is reviewed and the BDI transaction is scrutinized, presents a problem concerning business judgment on the part of the board of directors. The officers and directors of Safeway did not themselves profit from the sale of Beverage Distributors, Inc. to the three officers of that company. The sales price according to plaintiff was disproportionate to the value.

■ An analysis of the transaction, even when viewed from the eyes of a critical plaintiff, would not suggest that it constituted gross negligence which would be necessary to establish liability (Carrington v. Thomas C. Basshor Co., 118 Md. 419, 84 A. 746). It is not the role of the Court to substitute its judgment for that of the directors. Actually, Safeway appears to have benefited from the manner in which the sale of BDI was conducted.

The evidence discloses that a prompt sale was necessitated by the imminent revocation of licenses under which BDI was operating.[2] It further shows that the transfer might have been considered colorable if Safeway had attempted to include a "going concern value" in the sales price. Such value would have depended upon Safeway itself, which was attempting to establish an arms length relationship and was also trying to create an independent corporation which would sell beer and wine to other retailers. Sums in the sales price beyond actual physical assets might have lent credence to charges that Safeway was using BDI for purposes of obtaining illegal preferences or rebates.

The record since the sale of BDI also supports the wisdom of the sale in terms of profits realized by Safeway itself. The fact that the divorced corporation has also enjoyed a successful year in no way detracts from the soundness of the transaction from the standpoint of Safeway. The arrangement has been mutually profitable, as anticipated by the officers and directors of Safeway in the exercise of a sound business judgment. Cf. Wall & Beaver Street Corp. v. Munson Line, D.C., 58 F.Supp. 109; Murray-Baumgartner Surgical Instrument Co. v. Requardt, 180 Md. 245, 23 A.2d 697.

If defendants are entitled to require plaintiff to post security, the question arises as to the reasonableness of the amount requested, viz., $240,000. In the light of the number of different defendants—represented by different counsel—and the several causes of action presented by the complaint, extensive litigation is likely. But the authorities cited—Melancon v. Superior Court, 42 Cal.2d 698, 268 P.2d 1050; Olson v. Basin Oil Co., 136 Cal.App.2d 543, 288 P.2d 952; Chase v. Super-Cold Corp., 163 Cal.App.2d 83, 328 P.2d 812; Thomas v. Summers Gyro-

2. Plaintiff's Exhibit 18 reads, in part, as follows: "By reason of Safeway's ownership of the stock of B.D.I., B.D.I.'s beer and wine licenses in California have been the subject of bitter and extended litigation and legislative controversy. The litigation—instigated by other beer distributors—has sought revocation by the licensing authorities in California of the B.D.I. beer and wine licenses. Literally the problem has been before the State Board of Equalization, the Department of Alcoholic Beverage Control, the courts, the California Attorney General and the Legislature, in one form or another, continuously since 1937. During this twenty-one years B.D.I. and Safeway have successfully met all attacks, but it now seems apparent that so long as Safeway continues to own the stock of B.D.I., these attacks will continue. There is also the serious likelihood that unless the Safeway interest in the licenses and beer business is terminated, the licenses will be revoked. Even now B.D.I. and Safeway are parties to various proceedings brought against them by beer distributors, one of which has been the subject of a lengthy trial, but not finally decided, and the others of which are now set for extended trial commencing in June."

scope Co., 160 Cal.App.2d 234, 324 P.2d 893; Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528,—would suggest that the posting of a bond in the amount of $100,000 is adequate to protect defendants.

Accordingly, it is ordered that defendants' motions requiring plaintiff to post security be, and the same hereby are granted, in the amount of $100,000.