Jeanne KOSTER, Appellant,

v.

Lingan A. WARREN, Milton L. Selby, Chester N. Sanders, Dwight M. Cochran, et al., and Safeway Stores, Inc., Appellees.

No. 16800.

United States Court of Appeals
Ninth Circuit.

Oct. 19, 1961.

able probability that the prosecution of the cause of action alleged in the complaint against the moving party will benefit the corporation or its security holders." That section further provides:

> "At the hearing upon such motion, the court shall consider such evidence, written or oral, by witnesses or affidavit, as may be material: (a) to the ground or grounds upon which the motion is based * * *."

Following a hearing at which appellees, as moving parties, supported their motion by testimony and affidavit, the district court concluded that there was no reasonable probability that appellant would prevail in her causes of action. She was directed to post bond in the sum of $100,000. Upon her failure to do so within the time prescribed, the action was dismissed.

Upon this appeal, appellant attacks the district court's conclusion that there was no reasonable probability of her prevailing. Before we reach the merits of her contention in this respect, however, we are faced with two contentions with reference to the California statute upon which the court's order was based.

Appellant first contends that § 834 is wholly procedural and has no application to an action in a federal court. Upon the authority of Cohen v. Beneficial Industrial Loan Corporation, 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, we reject this contention. In that case the Supreme Court examined a New Jersey statute under which the defendant in a stockholder's derivative action could require the plaintiff to furnish security for expenses including attorney fees. The court stated at pages 555-556, 69 S.Ct. at page 1230:

> "But this statute is not merely a regulation of procedure. With it or without it the main action takes the same course. However, it creates a new liability where none existed before for it makes a stockholder who institutes a derivative action liable for the expense to which he puts the corporation and other defendants, if

Garry, Dreyfus, McTernan & Keller, San Francisco, Cal., for appellant.

Sidney L. Garwin, New York City, William T. Selby, Ventura, Cal., of counsel, for appellee Milton L. Selby.

W. Burleigh Pattee, Bruce M. Casey, Jr., and Chickering & Gregory, San Francisco, Cal., for appellee Chester N. Sanders.

Ackerman, Johnston, Johnston & Mathews, George H. Johnston and Willard P. Norberg, San Francisco, Cal., for appellee Lingan A. Warren.

McCutchen, Doyle, Brown & Enersen, Morris M. Doyle, Burnham Enersen and Bryant K. Zimmerman, San Francisco, Cal., for appellee Dwight M. Cochran.

Turner H. McBaine and Donald G. McNeil, San Francisco, Cal., for appellee Safeway Stores, Inc., and Robert A. Magowan.

Pillsbury, Madison & Sutro, San Francisco, Cal., of counsel, for appellees.

Before CHAMBERS, MERRILL and KOELSCH, Circuit Judges.

MERRILL, Circuit Judge.

Appellant, as stockholder in Safeway Stores, Incorporated, has brought this stockholder's derivative action on behalf of the corporation with federal jurisdiction resting on diversity of citizenship. She has taken this appeal from a judgment of dismissal for failure to post security pursuant to the provisions of § 834 of California's Corporations Code.

That section provides that the defendant in a stockholder's derivative action may move the court for an order requiring the plaintiff to furnish security upon the ground: "That there is no reason-

he does not make good his claims. Such liability is not usual and it goes beyond payment of what we know as 'costs.' If all the Act did was to create this liability, it would clearly be substantive. But this new liability would be without meaning and value in many cases if it resulted in nothing but a judgment for expenses at or after the end of the case. Therefore, a procedure is prescribed by which the liability is insured by entitling the corporate defendant to a bond of indemnity before the outlay is incurred. We do not think a statute which so conditions the stockholder's action can be disregarded by the federal court as a mere procedural device."

Appellant's second contention is that the section had been amended in 1959 to require defendants to show that there is no reasonable *possibility* of success and that the judgment here accordingly had erroneously been entered upon a superseded statute.

The amendment came into effect approximately one year after the action was filed, five months after appellee's motion had been heard and submitted and after entry of the district court order granting that motion but before entry of judgment of dismissal. Citing Vandenbark v. Owens-Illinois Glass Company, 1941, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327, appellant contends that in a diversity action it is the state law applicable at the time of judgment of the appellate court which governs.

■ As we read the law of California, however, this amendment to § 834 would not apply to pending actions.

In the first place, the Corporations Code itself, §§ 4 and 9,[1] casts doubt on the applicability of the code amendments to pending actions.

■ Further, in Aetna Casualty and Surety Company v. Industrial Accident Commission, 1947, 30 Cal.2d 388, 393, 182 P.2d 159, it was held that amendments, substantive in their effect and operation, would not be given a retroactive effect. The court stated (30 Cal.2d 394, 182 P.2d 162):

"If substantial changes are made, even in a statute which might ordinarily be classified as procedural, the operation on existing rights would be retroactive because the legal effects of past events would be changed, and the statute will be construed to operate only in futuro unless the legislative intent to the contrary clearly appears."

We conclude that the 1959 amendment to § 834 is not applicable to this pending action.

■ We proceed to a review of the district court's determination that there was no reasonable probability that prosecution of the causes of action alleged in appellant's complaint would benefit the corporation or its stockholders.

The principal causes of action related to employment contracts entered into between Safeway and appellees Warren, Selby, Sanders and Cochran. At the time these contracts were entered into, these appellees were officers of Safeway.

On October 3, 1955, Appellee Warren was president of the corporation and Appellee Cochran was a vice-president. On October 3, 1955, Warren resigned and Cochran resigned on February 7, 1956. The corporation agreed to retain them as consultants at substantial salaries, varying with the corporation's income and to permit them to retain other em-

---

1. 24 West's Ann.Cal.Code:

§ 4. "Savings clause; effect of code on existing rights. No action or proceeding commenced before this code takes effect, and no right accrued, is affected by the provisions of this code, but all procedure thereafter taken therein shall conform to the provisions of this code so far as possible."

§ 9. "Reference to statutes; amendments and additions. Whenever reference is made to any portion of this code or of any other law of this State, the reference applies to all amendments and additions now or hereafter made."

ployment benefits theretofore enjoyed by them.

On February 7, 1956, contracts of employment were entered into with Appellee Selby as president and Appellee Sanders as a vice-president, which contracts provided that their employment might be terminated upon sixty days' notice by either party and that upon such termination they would be retained as consultants at substantial salaries. Approximately a year later Selby resigned as president and became a consultant. On December 4, 1956, Sanders resigned and became a consultant.

Appellant's complaint alleged that under these contracts the total payment for consulting services by these four officers aggregated a minimum of $1,250,000 and a maximum of $2,100,000. It is alleged that to the knowledge of the board of directors of Safeway there was never any intention upon the part of the corporation to avail itself of such consulting services and that payment of such substantial sums for such services constituted a waste of assets. It is alleged that by these contracts these four individuals in effect sold their offices in breach of fiduciary duty owing to the corporation; that they did so in order to permit the installation of Appellee Robert A. Magowan as president and the putting into effect of his plans and proposals for the corporation and to forestall the possibility of a proxy fight. The complaint alleges:

"In the summer of 1955, Magowan determined that he desired to be the chief executive officer and a director of Safeway and planned to secure control of its Board of Directors. Warren, Selby, Sanders and Cochran were at that time the chief executive officers and in addition were directors of Safeway. In order to achieve Magowan's desire it was necessary to secure the approval or at least remove the active opposition of the aforesaid four officers and directors of Safeway. The aforesaid officers had the power to control the proxy machinery of Safeway and could prevent the consummation of Magowan's plan to become Safeway's chief executive and to control the Board of Directors.

"Magowan, Warren, Selby, Sanders and Cochran and the individuals who then comprised the Board of Directors entered into a plan and conspiracy under which Warren, Selby, Sanders and Cochran agreed that they would either not oppose Magowan's plan of becoming chief executive and to control the Board of Directors, or that they would actively assist him in achieving said plan, upon condition that each of them would receive substantial benefits from Safeway as payment for concurring in said plan and conspiracy."

At the hearing before the district court upon appellee's motion, there was no evidence of a conspiracy such as was alleged. The testimony and affidavits of persons concerned were consistent in their avowal of a good faith pursuit of valid business purposes: of making available to the corporation the consultant services of experienced men; of preventing these same experienced men from entering into competition with the corporation.

The evidence did establish that policy differences existed between Warren, as president, on the one hand, and certain board members and substantial stockholders on the other, and that Warren's resignation was due to these policy differences. The question, however, is whether the sums agreed to be paid (and subsequently paid) to Warren and to the other recipient appellees were provided in order to secure their resignations (with a fraudulent recital of fictitious considerations) or were in fact agreed to be paid for valid and valuable services and forbearances.

The simple fact is that appellant reads a sinister significance into the considerations agreed to be paid which neither the board nor the stockholders nor the district court found to exist.

The district court in its opinion stated:

"Safeway, through affidavits and the testimony of the several former officer-directors involved, has explained the basis for entering into consulting contracts with Warren, Selby, Cochran and Sanders. The stages, commencing with Warren's retirement from the presidency and the elevation of Selby and the promotion of Sanders and Cochran, to the resignation of the latter officers and their employment as consultants cover many months in the life of the corporation and tell a story of a modification of policy which is reflected in the shifts in personnel. At each stage in the corporate transition, the action of the board of directors was approved by a vote of stockholders. And since the officers in question have become consultants, they have refrained from competing with Safeway and have consulted, or been available for consultation pursuant to their contracts. The facts at the recent hearing on motion of defendants for security do not indicate a reasonable probability that plaintiff will prevail on the first cause of action which attacks the contracts." [176 F.Supp. 461.]

The record provides support for this conclusion and we cannot hold it to be error.

Appellant protests that the securing of Warren's resignation in the manner in which it was secured is not the proper method for resolving policy differences. She asserts, in effect, that it was Warren's duty to battle these policy questions out before the board and the stockholders and let them determine the issues; that he and the others were guilty of breach of duty in permitting themselves to be silenced as they were. Appellant's suggestion that Warren and his persuaders somehow managed to accomplish a major change of corporate policy without the knowledge of the board or the stockholders assumes a naive unawareness on the part of all that policy differences existed and that a change in officers would result

in policy changes. In any event, however, and assuming appellant's contentions to have merit, the proper course is to do battle herself before the board and the stockholders. Our concern remains solely with the considerations passing between Warren and the corporation.

As a second cause of action, the complaint alleges:

"On or about July 7, 1955, a Federal Grand Jury in Fort Worth, Texas, indicted Safeway, Warren, and one Earl Cliff, an employee of Safeway for violating the Sherman Act and the Robinson Patman Act in the State of Texas, and the State of New Mexico. On or about November 1, 1955, the aforementioned indictment was dismissed but was replaced by a similar criminal information against Safeway, Warren and Cliff.

"On or about June 3, 1957, all three defendants entered pleas of Nolo Contendere.

"On or about June 18, 1957, the United States District Court, for the Northern District of Texas, Fort Worth Division, imposed a fine of $105,000 on Safeway, $75,000 on Warren, and $7,500 on Cliff, and in addition thereto, sentenced Warren and Cliff to prison for one year. The prison sentences imposed on Warren and Cliff were suspended but the fines on the three defendants were collected by the Court.

"Pursuant to the aforesaid plan and conspiracy heretofore set forth and as a means of conferring additional benefits upon Warren, Safeway was caused to pay all of said fines including the fines imposed upon Warren and Cliff.

"Said payment of the fines imposed upon Safeway, Warren and Cliff constituted a gift of the assets of Safeway to Warren and constituted a waste of Safeway's assets in that the payment was made by Safeway for Warren without consideration. The criminal acts performed

by Safeway were performed at the express direction, order and command of Warren and with his knowledge and consent."

At the hearing appellees gave this explanation. When the indictment was replaced by a criminal information a civil suit also was brought against Safeway. The corporation, under its then president, Magowan, attempted settlement of the suits. Warren and Cliff had pleaded not guilty.

Magowan hoped to dispose of the criminal case and negotiate a settlement of the civil suit by consent decree in order to avoid the loss of the cases and the then greatly enhanced possibility of subsequent treble damage suits. He also wished to avoid adverse publicity to Safeway and further expense and loss of time by company personnel. Counsel advised him that unless all defendants pleaded nolo contendere the court would require that the case be tried. Warren and Cliff were then persuaded to change their pleas to nolo contendere.

The plan was successful. The trial of the cases was avoided and no treble damage suit was brought.

Appellees assert that the action they took in payment of the fine was justified as a matter of business; that the corporation received its quid pro quo and that the payment cannot be regarded as a gift or as waste of corporate funds.

Appellant contends that payment by a corporation of fines levied against its officers in antitrust suits must be held to be against public policy. It may well be that public policy would strike down, as lacking in quid pro quo, any arrangement whereby a corporate officer could with immunity from personal liability involve his company in antitrust violations. Such was not the arrangement here, however. The corporation was simply attempting to extricate itself from a troublesome situation which presented itself after the fact of the alleged violation. The payment of the fines was not made pursuant to any agreement of indemnity, but was to compensate Warren and Cliff for foregoing rights which if exercised could operate to the detriment of the corporation. If the United States has cause to object to the manner in which Warren and Cliff have managed to escape the consequences of their conduct, that problem is not before us.

The district court found no probability that appellant would prevail on this cause of action, and we agree.

The third cause of action charges waste of corporate assets by the disposition of an asset of Safeway for an inadequate price.

Beverage Distributors, Inc., a subsidiary of Safeway, was engaged in the wholesale beer and wine business. Safeway was its main customer. For many years its beer and wine licenses had been under attack in proceedings before California administrative agencies as well as in court litigation instigated by other distributors. These attacks were largely based upon the fact that Safeway was both owner and customer. In April, 1958, Safeway's attorneys concluded that unless Safeway disposed of the company the licenses would in all probability be revoked. Assets of the company were sold and cash distributed to Safeway with the result that the net worth of the company was reduced to $150,000. The capital stock was then sold at that sum to four former officers of the company.

Appellant complains of this method of disposing of the company. First, she points out that no attempt was made to secure other purchasers. Second, the tax consequences to Safeway of this method were highly disadvantageous in comparison with a dissolution of the company. She concludes that the directors' only concern was to benefit the purchasers and that the interests of Safeway were wholly disregarded.

Appellant makes no charge that any officer or director of Safeway made any personal profit from this transaction. Her attack is solely on the business judgment of the officers and directors.

The record discloses that valid business considerations entered into the board's

judgment to proceed as it did. The continuation of the company's existence was of advantage to Safeway in preserving an efficient and inexpensive distribution system. Continuation of the company in the hands of its former officers gave assurance of the continuation of Safeway's advantageous business relationship.

The district court found no probability that appellant would prevail on this cause of action and we agree.

As further justification for the requirement of security appellees have asserted affirmative defenses against appellant's suit. These relate to approval by board and stockholders of the matters challenged by the complaint; failure of appellant to seek board or stockholder action, prior to bringing of suit pursuant to Rule 23(b), F.R.Civ.P., 28 U.S.C.A.; and to other equitable defenses. None of these do we feel it necessary to discuss.

Affirmed.